# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| PATRICIA E.J. WILLIAMS,<br>        Appellant, | DOCKET NUMBER<br>DC-0752-18-0841-I-1 |
| v. | |
| NATIONAL AERONAUTICS AND<br>  SPACE ADMIN,<br>        Agency. | DATE: June 26, 2024 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Neil C. Bonney</u>, Esquire, Virginia Beach, Virginia, for the appellant.

<u>Kenneth H. Goetzke, Jr.</u>, and <u>Rob Ayers</u>, Hampton, Virginia, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### FINAL ORDER

¶1　　The appellant has filed a petition for review of the initial decision, which sustained her removal for the misuse of Government resources and misuse of official Government time. Generally, we grant petitions such as this one only in

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to supplement the administrative judge's analysis of Charge 1, VACATE the administrative judge's findings on Charge 2, and FIND that the agency did not prove Charge 2, misuse of official Government time, we AFFIRM the initial decision.

¶2        The appellant was a Management Support Assistant with the National Aeronautics and Space Administration (NASA) at the Langley Research Center. Initial Appeal File (IAF), Tab 5 at 47. Due to concerns that she was spending excessive time looking at non-work-related emails on her Government computer during work hours, the agency requested monitoring of her computer by the Office of the Chief Information Officer (OCIO).[2] *Id*. at 47, 77. The monitoring, which occurred between March 6 and April 6, 2018, utilized software to take screenshots of the appellant's computer activity every 30 seconds. *Id*. An OCIO report following a review of the screenshots found that "time was consistently

---

[2] The specific team within OCIO that conducted the monitoring was the Center Incident Response Team, or CIRT. IAF, Tab 5 at 77. Throughout the record below, the parties typically refer to the monitoring and the subsequent reports produced by CIRT as coming from the OCIO. These acronyms appear to be synonymous and thus, for purposes of this appeal, we adopt the OCIO nomenclature.

being spent reviewing non-NASA related solicitations in e-mail." *Id.* at 77. The OCIO report noted that a majority of these emails, which included solicitations and advertisements for online shopping sites, restaurants, coupons, and various other newsletters, were being moved and categorized into various folders on her Government email. *Id.* The OCIO report further noted that there were "also observations of coupons and newsletters being printed to an [agency] printer." *Id.* In addition to the appellant's use of her Government email, the OCIO report found various images and conversations on the appellant's hard drive that appeared to be sexually explicit. *Id.* at 78.

¶3     Upon review of the OCIO findings, the proposing official met with the appellant on June 27, 2018, to discuss the results and provide her with an opportunity to explain. *Id.* at 47. Two days later, a second OCIO monitoring was requested and opened for a monitoring period retroactive from June 17 to July 20, 2018. *Id.* at 58. The second OCIO report again utilized software to take screenshots of the appellant's Government computer every 30 seconds. *Id.* The second OCIO report found that, during the monitoring period, the appellant visited over 60 different websites to unsubscribe from non-work-related email newsletters. *Id.* It additionally found that the appellant printed seven non-work-related documents to an agency printer. *Id.*

¶4     On August 2, 2018, the agency proposed to remove the appellant based on the following two charges: (1) misuse of Government resources, and (2) misuse of official Government time. *Id.* at 47-55. In support of Charge 1, which had four underlying specifications, the agency charged the appellant with exceeding the limited personal use of her Government computer and with storing sexually explicit content on her Government computer. *Id.* at 47-49. Under Charge 2, the agency alleged that the appellant spent a minimal amount of time on work-related tasks, and that she instead spent a substantial amount of time either reviewing non-work-related items or being idle. *Id.* at 49-52. The appellant, through her attorney, provided both an oral and a written response to the proposed removal.

*Id.* at 34-36. Subsequently, the deciding official issued a notice of decision sustaining the charged misconduct and the penalty of removal. *Id.* at 24-30.

¶5 The appellant timely filed an appeal with the Board, claiming that the agency did not prove all of its charges and, in the alternative, that the penalty of removal was excessive. IAF, Tab 1 at 6. Thereafter, the administrative judge issued an initial decision on the written record affirming the agency's action.[3] IAF, Tab 31, Initial Decision (ID). He sustained three of the four specifications underlying Charge 1, and thus sustained the charge. ID at 29. He additionally sustained Charge 2, misuse of official Government time. ID at 29-35. The administrative judge found a nexus between the adverse action and the efficiency of the service. *Id.* He additionally found that the deciding official properly considered the relevant mitigating and aggravating factors and that the penalty of removal was within the tolerable bounds of reasonableness. ID at 41. Accordingly, he sustained the removal action. ID at 42.

¶6 The appellant has filed a petition for review, and the agency has responded. Petition for Review (PFR) File, Tabs 1, 4. The appellant argues that the agency failed to demonstrate why she received a more severe penalty than similarly situated comparators. PFR File, Tab 1 at 5-7. She additionally argues that the penalty of removal is excessive, and that the agency failed to properly consider and weigh all of the relevant mitigating factors. *Id.* at 6-8. Finally, the appellant argues that the agency denied her minimum due process when the deciding official relied on material ex parte communications in sustaining her removal.[4] *Id.* at 8-12.

---

[3] During a pre-hearing conference, the appellant notified the parties that she wished to waive her right to a hearing. IAF, Tab 25 at 1.

[4] The parties do not challenge the administrative judge's finding that the agency established a nexus between the adverse action and the efficiency of the service, and we see no reason to disturb that finding on review.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>We modify the administrative judge's analysis concerning the four specifications underlying Charge 1, but still conclude that the agency met its burden of proof regarding this charge.</u>

¶7    The agency's proposed removal listed four specifications under its first charge, misuse of Government resources. IAF, Tab 5 at 47-49. Having sustained specifications 1, 2, and 3, the administrative judge sustained the first charge. ID at 29. While we agree that the agency proved this charge, we modify the administrative judge's analysis as set forth below.

*The agency proved specification 1 by preponderant evidence.*

¶8    Specification 1 charged the appellant with consistently receiving non-NASA email solicitations to her Government email address, organizing them into various Outlook folders labeled by topic, and printing numerous non-work-related documents on an agency printer. IAF, Tab 5 at 47-48. According to the agency, this exceeded the limited personal use afforded to employees as set forth in the agency's policies. *Id*. Although the agency referenced the amount of time the appellant spent performing non-NASA related work, we construe the essence of specification 1 to be the appellant's excessive receipt of non-NASA emails and excessive printing. The amount of time she allegedly spent performing non-NASA work is the subject of Charge 2. *Id.* at 49. An agency must prove only the essence of a specification, and need not prove each factual element contained within the specification. *See Prather v. Department of Justice*, 117 M.S.P.R. 137, ¶ 29 (2011) (finding an agency met its burden by proving the essence of a specification without requiring it prove each fact set forth in the specification).

¶9    Under this construction, the administrative judge erred in relying on the amount of time the appellant spent reviewing non-NASA emails to sustain specification 1. Despite correctly sustaining the specification, the administrative judge cited the OCIO report for the notion that reviewing the non-NASA emails

filled "multiple hours of her work day" and "became an overwhelming obsession that eclipsed her other duties." ID at 18. Nonetheless, the agency proved that the appellant's receipt of non-NASA emails exceeded the limited personal use warranted for a Government employee.

¶10    The first OCIO report noted that the appellant received a large amount of non-NASA emails sent to her NASA email account, including receiving upwards of 50 non-NASA emails on one of the days monitored. IAF, Tab 5 at 79. The agency's policy directive LAPD 2810.1G(5) states that limited personal use of Government email is authorized, but "extensive personal use of Government resources is not appropriate." IAF, Tab 7 at 30-31. Although the policy does not further define "extensive personal use," we find that the appellant's consistent receipt of a large number of non-NASA emails, which had no official use, to her work email exceeded the limited personal use afforded to Government employees. As such, the agency proved by preponderant evidence that the appellant's conduct violated the policy and thus, specification 1 is sustained.

*The agency failed to prove specification 2.*

¶11    The agency's second specification charged the appellant with misusing Government resources by storing sexually explicit pictures on her Government laptop. IAF, Tab 5 at 48. The pictures in question are images of the appellant with her shirt open and breasts exposed. *Id.*, IAF, Tab 7 at 62-63. However, in sustaining specification 2, the administrative judge relied on other images and conversations that are the subject of specifications 3 and 4. ID at 22-23.

¶12    According to the appellant, the pictures described in specification 2 were not pornographic in nature but rather reflected concerns she had following breast surgery. IAF, Tab 5 at 38-39. In refuting this explanation, the administrative judge incorrectly referred to Skype conversations, which were the subject of specification 3, and other pictures on her computer not of the appellant, which

were the subject of specification 4.[5]  ID at 22-23.  It was error for the administrative judge to consider conversations and pictures beyond those relevant to specification 2.

¶13    Reviewing only the relevant pictures, the agency failed to prove specification 2 by preponderant evidence.  In support of this specification, the agency cited to agency policy NPD 2540.1H at attachment C.2.6, which defines the misuse of Government equipment as the storing of materials that depict sexually explicit conduct, as defined by 18 U.S.C. § 2256, "or other sexually explicit or sexually oriented materials."  IAF, Tab 5 at 48, Tab 7 at 27.  Under section 2256, sexually explicit conduct includes sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or the lascivious exhibition of the anus, genitals, or pubic area of any person.  18 U.S.C. § 2256(2)(A).  The images in question are four nearly identical pictures depicting the appellant's breasts in a straight-forward manner, with no overtly sexually suggestive features or posing.  IAF, Tab 7 at 62-63.  They do not depict any of the statutorily-defined categories of sexually explicit conduct.  Nor do we find, given the appellant's reasonable explanation that the pictures followed concerns from her breast surgery, that these pictures constituted sexually explicit or oriented materials as contemplated under the agency's policy.  Accordingly, the agency has failed to prove that the storing of these particular pictures on her Government computer constituted misuse of Government resources, as charged under the specification.  Therefore, specification 2 is not sustained.

*The agency proved specification 3 by preponderant evidence.*

¶14    Specification 3 involved Skype conversations from 2011 which were sexually explicit and suggestive.  IAF, Tab 5 at 48-49.  This specification

---

[5] The administrative judge incorrectly identified the woman featured in the pictures at IAF, Tab 7 at 42 as the appellant, and referenced her "pursed lips, as if sending a kiss," to conclude that the picture was not medical in nature but rather sexual.  ID at 23.  However, these are not the pictures referenced in specification 2 and this woman is not the appellant.

similarly charged the appellant with violating NPD 2540.H at attachment C.2.6 by storing materials depicting sexually explicit conduct that were contained within the Skype conversations. *Id*. An agency is required to prove only the essence of a specification, and need not prove each of the facts supporting the specification. *Prather*, 117 M.S.P.R. 137, ¶ 29.

¶15      The essence of specification 3 is the appellant's storing of sexually explicit materials on her Government computer. She admitted to having the sexually explicit images on her computer, but noted that it was unintentional, that she did not know they were there until the OCIO report, and that the storage of these materials was an inadvertent result of her transferring data from her phone, through her Government computer, onto the cloud. IAF, Tab 5 at 34, 38, Tab 27 at 24-25. The administrative judge appeared to have construed the specification to constitute an allegation of inappropriately plugging the appellant's personal cell phone into her Government computer. ID at 24-27. Noting that the data transfer's inclusion of inappropriate content was an "unfortunate consequence," the administrative judge nonetheless sustained the specification because he found that the appellant connected her personal phone to her Government computer. *Id.* While the administrative judge misconstrued the specification, any such error was harmless because it did not prejudice the appellant's substantive rights. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding adjudicatory error which is not prejudicial to a party's substantive rights provides no basis for reversal of the initial decision). The Skype conversations referenced in this specification clearly describe sexually explicit conduct as defined by 18 U.S.C. § 2256, and thus, the agency proved the appellant to be in violation of the policy. IAF, Tab 7 at 64-73. Accordingly, specification 3 is sustained.[6]

---

[6] Even if the agency charged the appellant with inappropriately plugging her personal cell phone into her Government computer, it failed to cite to, and we cannot find, any agency policy which explicitly prohibits this conduct. This is also true for specifications 2 and 4, which similarly reference the appellant plugging her personal cell phone into her Government computer.

*The agency proved specification 4 by preponderant evidence.*

¶16     Specification 4 involved sexually explicit images and personal conversations over Twitter and Facebook Messenger from an individual identified as the appellant's son, which were created between 2013 and 2014. IAF, Tab 5 at 49. This specification similarly charged the appellant with violating agency policy by storing sexually explicit materials on her Government computer from when she plugged in her personal device. *Id*. The administrative judge again misconstrued this specification when he determined it to constitute an allegation of inappropriately plugging her personal cell phone into her Government computer. ID at 29. He did not sustain the specification however, because he found that the appellant was unaware of the data that was transferred to her Government computer when the unauthorized device was plugged in. *Id.* This was erroneous, as knowledge is not a requisite element of the charge, and the administrative judge failed to consider whether the storing of sexually explicit materials violated agency policy.

¶17     The essence of specification 4 is that the appellant misused Government resources by storing sexually explicit materials on her computer when she plugged her personal device into her Government computer. IAF, Tab 5 at 49. The pictures referenced in specification 4 clearly depict sexually explicit conduct as defined by 18 U.S.C. § 2256. IAF, Tab 7 at 42-43. The storing of such sexually explicit materials violated agency policy NPD 2540.H at attachment C.2.6. *Id.* at 27. As such, the agency proved by preponderant evidence that the appellant's conduct violated the policy and thus, specification 4 is sustained.

¶18     As set forth above, the agency proved specifications 1, 3, and 4 by preponderant evidence. An agency's proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge as a whole. *Alvarado v. Department of the Air Force*, 103 M.S.P.R. 1, ¶ 16 (2006), *aff'd*, 626 F. Supp. 2d 1140 (D.N.M. 2009), *aff'd*, 490 F. App'x 932 (10th Cir. 2012). Accordingly, Charge 1 is sustained.

The agency failed to meet its burden of proof regarding Charge 2, misuse of official Government time.

¶19    Under Charge 2, the agency charged the appellant with spending a minimal amount of time on work-related tasks, and instead spending a substantial amount of time either reviewing non-work-related items or otherwise being idle. IAF, Tab 5 at 49-50. As evidence for the lack of work the appellant allegedly performed, the agency cited to the first OCIO report, which compiled screenshots of every 30 seconds of the appellant's monitor to review what work she was performing. *Id.* at 49, 77. In order to quantify the amount of time spent performing non-work-related tasks, the agency tasked the Office of Human Capital Management (OHCM) with reviewing the thousands of screenshots captured by the OCIO report. IAF, Tab 26 at 22-23. OHCM created a minute-by-minute spreadsheet that labeled the type of work performed by the appellant in a given minute. IAF, Tab 8 at 4-35. The agency relied on this spreadsheet in charging the appellant with spending between 1 and 4 hours each day during the monitoring period performing non-work-related tasks. IAF, Tab 5 at 50-52. The record below contains only a select handful of the actual screenshots gathered by the OCIO report. IAF, Tab 6.

¶20    The administrative judge found that the appellant's arguments failed to rebut the findings of the OHCM spreadsheet analyzing the OCIO report. ID at 34. Specifically, the appellant argued that the OCIO report failed to accurately capture how long she spent reviewing various non-work-related items, when other work-related items were simultaneously open on her computer. IAF, Tab 27 at 8. The administrative judge provided limited reasoning for his decision to reject the appellant's argument. ID at 34-35. Rather, he merely deemed the OHCM spreadsheet as valid and concluded that the appellant spent "literally hours of computer time engaged in non-productive, non-official activity." ID at 35. As set forth below, the minute-by-minute labeling of the spreadsheet is inaccurate. Thus, it was an error to rely on the OHCM spreadsheet as evidence of Charge 2.

In the absence of OHCM's spreadsheet, the agency's proffered evidence in support of Charge 2 is insufficient to meet its burden. As such, we disagree with the administrative judge's decision to sustain this charge.

¶21     The individual within OHCM who created the spreadsheet stated that she established criteria for distinguishing a particular minute as work-related or non-work-related. IAF, Tab 26 at 24. She explicitly stated that "if both work and non-work related images were engaged then [she] reflected the activity as work related." *Id.* However, a cross-referencing between the limited screenshot images provided and the spreadsheet categorizing each minute shows inaccurate labeling of particular minutes based on this OHCM employee's criteria. For example, on March 8, 2018, at 8:59 a.m., the spreadsheet lists the appellant as performing non-work-related tasks. IAF, Tab 8 at 6. However, the actual screenshot of the appellant's dual monitor clearly shows her having open a P Card Request Form and a Supply Request Form, which are work-related items. IAF, Tab 6 at 7. According to the OHCM individual's criteria, this minute, containing both work-related and non-work-related images, should have been reflected as work-related activity. It was not. A review of other screenshots provided showed similarly inaccurate labeling. *Compare* IAF, Tab 7 at 5, *with* Tab 8 at 31. Given the limited screenshots in the record and the inaccuracy of the spreadsheet compared to the screenshots available, we find that the spreadsheet is of little probative value. Thus, the only remaining evidence provided by the agency in support of Charge 2 are the OCIO reports themselves.

¶22     The first OCIO report found that the appellant's time "was consistently being spent reviewing non-NASA related solicitations in e-mail," but it did not quantify the total amount of time spent reviewing non-work-related items. IAF, Tab 5 at 77. A review of 4 days specifically found the appellant's viewing of non-work-related emails to be consistent. *Id.* at 79. However, as the previously discussed screenshots demonstrate, the appellant could and did have open both non-work-related emails while simultaneously performing work-related

tasks. Because the first OCIO report does not quantify the amount of time the appellant spent performing non-work-related tasks, it does not prove the amount of time the appellant spent performing such non-work-related tasks. The second OCIO report similarly does not support Charge 2. In fact, it supports an opposite conclusion, finding that the appellant performed "[c]onsistent NASA-related work involving p-card purchasing, documentation, booking of NASA employee conferences and e-mail correspondence." *Id.* at 59. Accordingly, we vacate the administrative judge's determination that the agency proved Charge 2 and find that the agency failed to meet its burden of proof on this charge.

Based on the sustained charge, the penalty of removal is within the maximum reasonable penalty.

¶23    When not all of an agency's charges are sustained, as here, the Board will consider carefully whether the sustained charges merit the penalty imposed by the agency. *Suggs v. Department of Veterans Affairs*, 113 M.S.P.R. 671, ¶ 6 (2010) *aff'd*, 415 F. App'x 240 (Fed. Cir. 2011). Indeed, the Board may mitigate the agency's penalty to the maximum reasonable penalty so long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges. *Id.* However, in doing so, the Board may not disconnect its penalty determination from the agency's managerial will and primary discretion in disciplining employees. *Id.* The Board has articulated factors to be considered in determining the propriety of a penalty, including the nature and seriousness of the offense, consistency of the penalty with those imposed upon other employees for the same or similar offenses, and the consistency of the penalty with any applicable agency table of penalties. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).

> *The appellant has failed to establish that other employees were similarly situated to her for purposes of the penalty.*

¶24    On review, the appellant alleges that, when an appellant shows that similarly situated employees are charged with similar behavior, the agency must

prove a legitimate reason for the difference in their penalties, which it did not do here. PFR File, Tab 1 at 5-7. She contends that, because the agency failed to provide a legitimate reason for the difference in penalties, her penalty should be mitigated. *Id.* at 7.

¶25 It is well-settled that among the factors an agency should consider in setting the penalty for misconduct is the "consistency of the penalty imposed with those imposed upon other employees for the same or similar offenses." *Douglas*, 5 M.S.P.R. at 305. Here, the other employees cited by the appellant are not proper comparators. As the Board held in *Singh v. U.S. Postal Service*, in most cases, the universe of potential comparators should be limited to those employees whose misconduct and/or other circumstances closely resemble those of the appellant. *Singh*, 2022 MSPB 15, ¶ 13. There must be a close connection between the misconduct or some other factor in order for an employee from another work unit or supervisory chain to be a proper comparator for purposes of considering the consistency of the penalty. *Id.*

¶26 Here, the agency listed several comparator employees in determining the appropriate penalty. IAF, Tab 8 at 36-42. The employees listed span numerous work units, supervisory levels, and General Schedule levels. *Id.* Although charged with similar offenses, there is nothing about the charged misconduct amongst the employees to make them proper comparators. *Cf. Williams v. Social Security Administration*, 586 F.3d 1365, 1368-69 (Fed. Cir. 2009) (finding the employees comparators when, despite their different supervisors, the agency's discipline stemmed from both employees' involvement in the same tax fraud scheme). As such, the agency was not required to provide any reasoning for the difference in treatment between the appellant and these alleged comparators.

> *Weighing the relevant Douglas factors, the penalty of removal is reasonable.*

¶27 In evaluating whether a penalty is reasonable, the Board will consider, first and foremost, the nature and seriousness of the misconduct and its relation to the

employee's duties, position, and responsibilities, including whether the offense was intentional or frequently repeated. *Von Muller v. Department of Energy*, 101 M.S.P.R. 91, ¶ 23, *aff'd*, 204 F. App'x 17 (Fed. Cir. 2006), *and modified on other grounds by Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657 (2010), *overruled on other grounds by Singh*, 2022 MSPB 15.

¶28    Here, the sustained offense is the misuse of Government resources. This is undoubtedly a serious offense. *See Martin v. Department of Transportation*, 103 M.S.P.R. 153, ¶ 13 (2006) *aff'd*, 224 F. App'x 974 (Fed. Cir. 2007) (upholding agency's penalty for misuse of Government resources when the appellant used his Government computer for personal use and had sexually explicit material on his hard drive); *Cobb v. Department of the Air Force*, 57 M.S.P.R. 47, 53 (1993) (upholding removal for misuse of Government resources based on excessive use of Government computer and printer). Indeed, the excessive receipt of non-work-related emails was intentional, frequently repeated, and occurred while the appellant was on duty.[7] IAF, Tab 5 at 47-48. Although the appellant's performance rating remained satisfactory, as noted by the proposing official, her most recent evaluation included notations of negative customer feedback regarding completion of tasks just at or past deadlines. *Id.* at 52, 74. Furthermore, the penalty of removal is within the range of penalties for a first offense of this type in the agency's table of penalties. IAF, Tab 7 at 84-85; *see Phillips v. Department of the Interior*, 95 M.S.P.R. 21, ¶ 17 (2003) (recognizing that an agency's table of penalties is a factor to be considered in

_____

[7] The appellant alleges that some of the sustained misconduct underlying Charge 1 was unintentional; specifically, she contends that the storage of the sexually explicit materials on her Government computer was the inadvertent result of her transferring data from her phone, through her Government computer, onto the cloud. IAF, Tab 5 at 34, 38, Tab 27 at 24-25. We have considered the appellant's contention as it relates to the reasonableness of the penalty. *See Von Muller*, 101 M.S.P.R. 91, ¶ 23 (stating that, in evaluating whether a penalty is reasonable, the Board will consider whether the offense was intentional). We nonetheless find that removal is reasonable under the circumstances. Among other things, and as described above, the appellant's misconduct under another sustained specification was frequent and intentional.

assessing the reasonableness of a penalty), *aff'd*, 131 F. App'x 709 (Fed. Cir. 2005). In assessing the appellant's potential for rehabilitation, we find that it does not constitute a mitigating factor under the circumstances in this case. While the second monitoring report noted that the appellant was observed unsubscribing from non-work-related newsletters, she also continued to print personal items to an agency printer and typed mocking messages to the monitoring staff during the second monitoring period, thus cutting against her rehabilitation potential. IAF, Tab 5 at 27-28, 58. Despite the presence of some mitigating factors, including the appellant's 32 years of satisfactory service as a nonsupervisor and her lack of prior discipline, we find that the seriousness of the offense outweighs these factors. Thus, we find that the penalty of removal is within the tolerable bounds of reasonableness.

<u>The appellant has failed to establish that her due process rights were violated.</u>

¶29      On review, the appellant argues that the agency violated her due process rights when the deciding official considered ex parte communications in deciding on the appropriate penalty. PFR File, Tab 1 at 8-12. Specifically, the appellant alleges that the deciding official considered her declining relationship with her supervisor in reaching the conclusion to remove the appellant. *Id.* at 10-11. The appellant raised this argument below, but the administrative judge failed to address it. IAF, Tab 27 at 17-20. Although his failure to address the argument was an error, it was harmless, as the appellant's due process rights were not violated. *See Panter*, 22 M.S.P.R. at 282 (finding adjudicatory error which is not prejudicial to a party's substantive rights provides no basis for reversal of the initial decision).

¶30      Pursuant to *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999), a deciding official violates an employee's due process rights when she relies upon new and material ex parte information as a basis for her decision on the merits of a proposed charge or the penalty to be imposed. An

employee's due process right to notice extends to both ex parte information provided to a deciding official and to information known personally to the deciding official if she considered it in reaching her decision without previously disclosing it to the appellant. *Mathis v. Department of State*, 122 M.S.P.R. 507, ¶ 6 (2015). However, *Ward*, *Stone*, and their progeny recognize that not all ex parte communications rise to the level of due process violations; rather, only ex parte communications that introduce new and material information to the deciding official are constitutionally infirm. *Id.* In *Stone*, the Federal Circuit identified the following factors to be used to determine if ex parte information is new and material: (1) whether the ex parte information introduced cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was "of the type likely to result in undue pressure on the deciding official to rule in a particular manner." *Stone*, 179 F.3d at 1377.

¶31 Here, in the reply meeting to the notice of proposed removal, the deciding official asked the appellant if it would be a challenge to return to the same job with the same supervisor if her removal was not sustained. IAF, Tab 5 at 36. The appellant responded "honestly, yes," and continued to say that while she is able to work in that environment, she does not want to, and that she would keep enduring. *Id.* The deciding official, in her written declaration, referenced this line of questioning for the notion that the appellant did not sufficiently express remorse because her apology was based on a qualifier: "that she would tolerate the work environment until she found another opportunity instead of acknowledging her role in repairing the relationship [with her supervisor] and changing her behavior." IAF, Tab 26 at 19.

¶32 The Board has held that a deciding official does not violate an employee's rights when she considers matters the employee raised in her response to the proposed action and then rejects those arguments in reaching a decision. *Mathis*, 122 M.S.P.R. 507, ¶ 9. We find that the deciding official did not consider any

"new" information in assessing whether the appellant expressed remorse for her conduct, rather she properly drew conclusions based on the information presented to her. Thus, the appellant's due process rights were not violated.

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>.** As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:        _____
                      Gina K. Grippando
                      Clerk of the Board

Washington, D.C.